DECISION AND JUDGMENT ENTRY
This appeal is before the court on appeal from a decision and judgment entry of the Lucas County Court of Common Pleas wherein appellant, Montrel Wilson, was convicted of murder with a firearm specification, a violation of R.C. 2903.02 and R.C. 2941.145, a special felony, and burglary, a violation of R.C. 2911.12(A)(4). Appellant now appeals, setting forth the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "The Trial Court Erred When it Limited Defense Counsel's Ability to Effectively Cross-Examine the State's Witness With the Use of Their [sic] Videotape Statements.
"SECOND ASSIGNMENT OF ERROR
 "The Trial Court Erred When it Ordered the Defendant-Appellant to Pay Court-appointed Counsel's Fees.
"THIRD ASSIGNMENT OF ERROR
 "Defendant-Appellant's Convictions Are Not Supported by Sufficient Evidence and Are Therefore a Denial of Due Process.
"FOURTH ASSIGNMENT OF ERROR
 "Defendant-Appellant's Convictions are Against the Manifest Weight of the Evidence.
"FIFTH ASSIGNMENT OF ERROR
 "Insofar as Any Error Complained of Was Not Adequately Preserved Below, Defendant-Appellant Was Denied The Effective Assistance of Counsel."
Appellant was convicted of murdering Derrick Turner, also known as "X", who was shot and killed near a store at the corner of Highland and Detroit Avenues at approximately 11:00 p.m. on April 16, 1998. Appellant was also convicted of burglary for entering the home of Sarah Lawson while running away from police. According to police testimony, on April 25, 1998, officers went to a residence where appellant was reportedly staying, and where police later found a gun. Appellant ran from the residence and police chased him to Lawson's yard, where they found him hiding behind a garbage can and arrested him. Lawson and one of her friends testified that they did not know appellant, who had run into the house through the front door just before he was arrested, barefoot, shirtless, and muddy. Although appellant refers to his "convictions" in his third and fourth assignments of error, this court notes that he does not address his conviction for burglary in his brief. Therefore, this decision will be limited to appellant's conviction for murder with a firearm specification.
Furthermore, although appellant mentions both Carla Johnson and Merria Jean Dyer, also known as "J.D.", making videotaped statements to police, and the proffer quoted in appellant's brief makes reference to witness Chris Tucker, appellant's first assignment of error focuses on his desire to have used videotapes of only one eyewitness, Carla Johnson. This court notes that we did not find any videotapes of J.D. Dyer in the record for this case, and appellee states in its brief that J.D. Dyer was not videotaped. Therefore, we will focus our attention on the statements and testimony of Carla Johnson.
In his first assignment of error, appellant claims the trial court erred when it would not allow defense counsel to effectively cross-examine "the State's Witness," presumably Carla Johnson. Appellant asserts that the best way for the jury to determine Johnson's credibility would have been to view videotape of her interviews with police which revealed her demeanor, especially when she told police during her second interview that she did not know the shooter's identity. The state responds that the trial court did not err in excluding the use of videotape statements because to allow their use would have been "double impeachment" since defense counsel conducted thorough cross-examination without the use of the videotape.
It is well-settled that "when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In addition, Evid.R. 608(B) provides in pertinent part:
 "(B) * * * Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
Furthermore, "Courts have found that a trial court does not abuse its discretion by excluding extrinsic evidence of a prior inconsistent statement if the witness admits to having made the prior statement."State v. Puckett (Oct. 1, 1996), Scioto App. No. 95CA2362, unreported. See State v. Valentine (Apr. 26, 1995), Washington App. No. 94CA06.
Early in appellant's trial, prior to witness testimony, defense counsel was provided with an opportunity to watch videotapes of Carla Johnson's interviews with police for the purpose of working with the prosecution to interpret inaudible sections within the transcripts of those tapes. Using the transcript of Johnson's second interview with police during cross-examination, defense counsel Wingate elicited the following testimony from eyewitness Carla Johnson:
 "WINGATE: Do you recall this question and answer on page 39 by * * * the detective, he said to you * * * `If the suspect in this murder were somebody you know, would you tell me?' `Sure.' Do you recall that question and answer?
"JOHNSON: Uh-huh.
 "WINGATE: All right. `Okay. Would there be anybody' — this is the detective. `Would there be anybody that you would protect because they shot Derrick Turner?' `Johnson: No.' Do you recall that question and answer?
"JOHNSON: Yep.
 "WINGATE: All right. Question, `Would you have a reason not to testify if we end up issuing subpoenas for you in court?' `Johnson: Not at all. I have no reason.' Do you recall that question and answer?
"JOHNSON: Yes.
 "WINGATE: All right. Question, `Did you see the guy?' This is by the detective. `Johnson: I didn't see the — like I told you, I seen him when he was shooting. That's just a normal reaction that I was like that.' Do you recall that question and answer?
 "JOHNSON: Yes, I said that because I was scared, and I didn't want to tell at that point in time. * * *
"* * *
 "WINGATE: All right. But at that point you never told them that Montrel Wilson was the shooter?
 "JOHNSON: Like I said, I didn't want to tell it was Montrel because I knew, but I didn't want to tell.
"* * *
"WINGATE: * * * So you lied at that point; right?
"JOHNSON: Yes, I did. I admitted to them that I did."
Following this testimony, defense counsel asked to play the videotape of that interview. Proceedings were then held in chambers, during which the trial court explained:
 "THE COURT: Now, we came in here about viewing the tape. I've given you the entire transcript and so far have not limited you except for repetition of the same questions as regards to cross examination with those transcripts. We're not going to go the third step, and that is viewing the entire tape. * * * Now we're not going to go on and on and on. * * * I have not stopped you. I have allowed you to go on ad infinitum with the entire transcripts, and that's as far as I'm going to go * * *."
Based on a thorough review of the transcripts and videotaped statements in this case, we find no abuse of discretion in the exclusion of the videotape. We therefore find appellant's first assignment of error not well-taken.
In his second assignment of error, appellant asserts that the trial court erred by ordering him to pay court-appointed attorney fees at his sentencing hearing. Appellant requests that we reverse this order because the court determined him to be indigent, he is facing a lengthy sentence, and there was no inquiry into his ability to repay trial counsel's fees. Appellee contends that the order is interlocutory and as such, is not a final, appealable order subject to appellate jurisdiction. Appellee argues that if the order was reversed, the state would be precluded from ever recouping appellant's attorney fees in the event that he would be able to repay in the future. The latter is without merit in that the court or state could order the appellant to return for the necessary hearing and enter a civil judgment.
R.C. 2941.51(D) states:
 "The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay. * * *"
We have previously ruled on the issue of an indigent defendant ordered to pay attorney fees in State v. Brown, in which we stated:
 "An indigent defendant may properly be required to pay his attorney fees only after the court makes an affirmative determination on the record in the form of a journal entry, that the defendant has, or reasonably may be expected to have, the means to pay all or some part of the cost of the legal services rendered to him. The court must then enter a separate civil judgment for the attorney fees or any part thereof that the court finds the defendant has the ability to repay. The court may not imprison the defendant in order to compel him to pay the civil judgment of the attorney fees." State v. Brown (Nov. 19, 1999), Lucas App. No. L-97-1332, unreported, quoting Galion v. Martin (Dec. 12, 1991), Crawford App. No. 3-91-6, unreported.
See State v. Burns (Mar. 15, 1999), Marion App. No. 9-98-21, unreported; State v. Watkins (1994), 96 Ohio App.3d 195, 198.
In this case, as in State v. Brown, the trial court did not determine on the record that appellant was able to pay for his court-appointed counsel. Therefore, we find appellant's second assignment of error well-taken.
We will address appellant's third and fourth assignments of error together because both challenge the quality of the evidence supporting his conviction. Appellant claims that his murder conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.
Weight of the evidence indicates that the greater amount of evidence supports one side of an issue more than the other. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard we must use to review whether the manifest weight of the evidence sustains a conviction:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
The concept of manifest weight of the evidence is distinguished from sufficiency of the evidence. State v. Jenks, 61 Ohio St.3d 259. Sufficiency of the evidence is the legal standard to test whether the evidence introduced at trial is legally sufficient or adequate as a matter of law to support a verdict. State v. Thompkins,78 Ohio St.3d at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal may be entered for the defendant. See Thompkins, supra, at 386.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, id. In so doing, the court of appeals sits as a "thirteenth juror", and after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., citation omitted. Determinations of witness credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
This court has thoroughly reviewed the record of proceedings in the trial court, and upon consideration thereof, finds there was no evidence that the jury lost its way or created a manifest miscarriage of justice. Accordingly, appellant's third and fourth assignments of error are not well-taken.
In his fifth assignment of error, appellant asserts ineffective assistance of counsel. However, in his brief, appellant did not set forth an argument concerning this issue. Appellant mentions counsel's failure to preserve error, but does not point to any specific error. App.R. 12(A)(2) provides that this court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based. Accordingly, appellant's fifth assignment of error is found not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed and remanded in part. The portion of the judgment ordering that appellant pay court-appointed attorney fees is vacated, and the judgment is affirmed in all other respects. Costs assessed to appellant.
 ________________________ RESNICK, M. L., J.
 Richard W. Knepper, P.J., Mark L. Pietrykowski, J., JUDGES CONCUR.